1

2

3       **UNITED STATES DISTRICT COURT**

4       **NORTHERN DISTRICT OF CALIFORNIA**

5       **SAN JOSE DIVISION**

6

7    KIMBERLY COX,                              Case No.  15-cv-02253-BLF

             Plaintiff,
8
                                               **ORDER GRANTING MOTIONS TO**
9       v.                                     **DISMISS**

10   OLD REPUBLIC NATIONAL TITLE                [Re:  ECF 45, 51, 53]
     INSURANCE COMPANY, et al.,
11
             Defendants.
12

13          Before the Court are three Motions to Dismiss by Defendants Mortgage Electronic

14   Registration Systems, Inc. ("MERS"), ECF 45 ("MERS Mot."), Old Republic Default

15   Management Services, a Division of Old Republic National Title Company ("Old Republic"),

16   ECF 51 ("Old Republic Mot."), and New Penn Financial, LLC, d/b/a Shellpoint Mortgage

17   Servicing ("Shellpoint") and The Bank of New York Mellon fka The Bank of New York as

18   Trustee for The Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2005-02

19   Mortgage Pass-Through Certificates, Series 2005-02 ("BONY") (collectively, "Defendants"), ECF

20   53 ("Shellpoint Mot.").[1]

21          Defendants raise numerous grounds for dismissal in their three motions to dismiss,

22   including that Plaintiff lacks standing to bring this action in its entirety, that many of the counts

23

24   [1] Plaintiff alleges in her First Amended Complaint ("FAC") that Old Republic is a "fictitious
     business, non-existent entity and a sham." FAC ¶ 8. She makes the same allegation with respect to
25   BONY and further "contends that . . . the entity sued by Plaintiff may not in fact be represented by
     its purported counsel nor made an appearance in this action." FAC ¶ 10. In their moving papers,
26   Old Republic and BONY state that they were erroneously sued as "Old Republic National Title
     Insurance Company" ("ORNTIC") and "The Bank of New York Mellon Corporation as Trustee
27   for the Certificateholders of CWMBS, Inc. – CHL Mortgage Pass-Through Trust 2005-02,"
     ("BONYMC") respectively. Old Republic Mot. at 12, Shellpoint Mot. at n.2. This issue is not
28   properly before the Court on these motions to dismiss. However, the Court notes that the Clerk
     declined to enter default as to ORNTIC and BONYMC on September 1, 2015. ECF 62-64.

United States District Court
Northern District of California

are time-barred, and that certain counts do not apply to certain Defendants because of the Defendants' alleged role in the loan process. For the reasons stated below, the Court GRANTS Defendants' Motions to Dismiss each of the claims with leave to amend, as requested by Plaintiff at the hearing.

## I.     BACKGROUND

This action constitutes Plaintiff Kimberly Cox's ("Plaintiff") fourth attempt to rid herself of a purported loan secured by the residential real property commonly known as 131 Sutphen Street in Santa Cruz, CA ("Property"). First Amended Compl. ("FAC"), ECF 40 ¶¶ 7, 13. Plaintiff alleges that she acquired the Property in fee simple and recorded the deed on September 1, 1998. *Id*. ¶ 14. Plaintiff alleges that the Property was, at all relevant times, her principal dwelling and remains her "primary property," though she is now a citizen of Nevada. *Id*. ¶¶ 7, 13.

Plaintiff alleges that, on December 21, 2004, a copy of a Deed of Trust ("DOT"), dated December 10, 2004, was recorded. *Id*. ¶ 15. The DOT purported to secure a $544,000 loan to Plaintiff with the Property. *Id*. Exh. 10. The Deed named Plaintiff as the Borrower, America's Wholesale Lender ("AWL"), described as "a corporation organized and existing under the laws of New York," as the Lender, CTC Real Estate as the Trustee, and MERS as the Beneficiary. *Id*. ¶¶ 1, 15; Exh. 10, ECF 40-3 at 3-4. Plaintiff alleges that the Deed was and is invalid and counterfeit because AWL did not exist as named (i.e., as a New York corporation) and because her initials and signatures throughout the DOT were forged. *Id*. ¶ 15. She does not, however, allege that she never received the $544,000.

Plaintiff additionally alleges that, notwithstanding the loan's invalidity, she rescinded the loan on July 13, 2007 by "serving the rescission on the Lender designated in the DOT." *Id*. ¶¶ 16, 32. Plaintiff attaches a copy of the alleged letter as Exhibit 13 to the FAC. In the letter, addressed to AWL, Plaintiff writes that, pursuant to TILA, she "hereby rescind[s] the above-referenced loan due to violations of TILA which includes, but is not limited to the unlawful failure to give me timely, accurate and proper material disclosures and notices under TILA." *Id*. Exh. 13 at 1. Plaintiff explains that she is "ready, willing and able to tender the property or the reduced payoff amount" once certain conditions are met. *Id*. at 2. She gives AWL "twenty (20) days . . . to accept

United States District Court
Northern District of California

United States District Court
Northern District of California

[her] offer of tender . . . or [*sic*] return all [her] payments not accounted for [and] terminate the deed of trust;" otherwise, she states, "rescission will automatically terminate [the DOT] and ownership of [the Property] will vest in [Plaintiff] without any obligation to pay any more for it." *Id.* at 2. Plaintiff alleges that Defendants had until August 5, 2007 to return her payments and terminate the security interest but that none did so. FAC ¶ 32. As a result, Plaintiff alleges, the subject Note and DOT were not only invalid and void, but also extinguished by law in 2007. *Id.*

On November 13, 2009, MERS assigned the allegedly invalid DOT to The Bank of New York Mellon fka The Bank of New York as Trustee for the Benefit of the Certificateholders CWMBS, Inc. CHL Mortgage Pass-Through Trust 2005-02 Mortgage Pass-Through Certificates, Series 2005-2 ("BONYM") and substituted Reconstruct Company, N.A. ("Reconstruct") as the new trustee. *Id.* ¶ 18, Exh. 7. Plaintiff alleges this Substitution and Assignment was recorded on December 7, 2009. FAC ¶ 18.

Plaintiff alleges that, on July 2, 2010, she recorded a notice denying the authenticity of her signatures on the DOT. *Id.* ¶ 19; FAC, Exh. 14 at 2.

On November 12, 2010, Plaintiff filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Northern District of California before Judge Novack. *See* Case No. 5:10-bk-61716. Plaintiff listed the Property as real property owned in "Fee Simple" on her Schedule A. MERS RJN Exh. A, ECF 46-1 at 2.[2] Plaintiff listed debt related to her Property in Schedule F, which pertains to unsecured nonpriority claims, as purportedly owed to three different creditors: AWL, with Countrywide Home Loans, The Bank of New York, and The Bank Of New York Mellon As Trustee C/O BAC Home Loans Servicing as assignees or other notification for AWL; BAC Home Loans Servicing, LP; and Reconstruct. *Id.* at 9, 10, 12; *see also* FAC ¶ 32. Plaintiff described each debt as contingent, unliquidated, and disputed, "contend[ing] that if this debt is proven to exist at all, it is unsecured and subject to discharge. Subject to Setoff [*sic*]." MERS RJN Exh. A at 9, 10, 12.

On April 12, 2011, Plaintiff initiated an associated adversary proceeding in the Bankruptcy

---

[2] As discussed in Section III.A of this Order, the Court GRANTS MERS' Request for Judicial Notice.

United States District Court
Northern District of California

1  Court against numerous defendants, including some of the Defendants in this case, seeking

2  declaratory relief regarding the lien on the Property, to cancel the security instrument, and to quiet

3  title. *See* Case No. 5:11-ap-05106. On June 17, 2011, Judge Novack granted a motion to dismiss

4  the adversary proceeding, finding that because the claims arose before the filing of the bankruptcy,

5  they either belonged to the estate if they had not been abandoned and therefore only the Chapter 7

6  trustee had standing to bring them or, if they had been abandoned, the bankruptcy court did not

7  have jurisdiction over the claims. MERS RJN Exh. E, ECF 46-5 at 7; *Id.* Exh. D, ECF 46-4 at 2.

8      On January 27, 2012, the bankruptcy court granted Plaintiff a discharge under 11 U.S.C. §

9  727 and closed Plaintiff's Chapter 7 case. MERS RJN Exh. B, ECF 46-2 at 2. Plaintiff alleges that

10  this discharge included any purported debt to Defendants. FAC ¶ 32.

11      On May 24, 2012, Plaintiff filed an action in the Santa Cruz Superior Court relating to this

12  loan, again against numerous defendants, including some of the Defendants in this case, seeking

13  declaratory relief and to quiet title and asserting Unfair Practices Act ("UPA") violations, slander

14  of title, and quasi-contract claims. *See* Santa Cruz Cnty. Super. Ct. Case No. CV174201.[3]

15      Plaintiff alleges that, on October 28, 2014, a Substitution of Trustee ("SOT 2"), dated

16  October 7, 2014, was recorded. FAC ¶ 21.  Through SOT 2,[4] Shellpoint substituted in Old

17  Republic Default Management Services, a Division of Old Republic National Title Insurance

18  Company ("Old Republic") as trustee for the allegedly invalid DOT. *Id.* Exh. 18. Plaintiff alleges

19  that, on that same day, a Notice of Default and Election to Sell Under Deed of Trust ("NOD 1"),

20  dated October 21, 2014, was recorded. FAC ¶ 20 and Exh. 15. NOD 1 lists Old Republic as the

21  trustee but is signed by ORNTIC. *Id.* at 2. NOD 1 additionally identifies MERS as nominee for

22  AWL as beneficiary and Shellpoint as servicer for BONY as the beneficiary or its agent. *Id.* at 2.

23  Plaintiff alleges that this Notice of Default was recorded prematurely because Shellpoint did not

24  execute the California Authorization to Proceed until December 10, 2014. *Id.* ¶ 20 and Exh. 16. In

25

26  ───────────────
   [3] Shellpoint and BONY argue that Plaintiff voluntarily dismissed the state court action. Shellpoint
27  Mot. at 4. Shellpoint and BONY do not cite to anything to support this contention, and it is not
   alleged in the FAC.
28  [4] Plaintiff refers to the two Substitutions of Trustee as "SOT 2" and "SOT 3." The Court follows
   Plaintiff's naming convention.

addition, Plaintiff alleges that, contrary to Shellpoint's representation in the Authorization to Proceed, it never offered Plaintiff a loan modification or workout plan to avoid foreclosure. *Id.* ¶ 20 and Exhs. 16, 17 at 7. Plaintiff alleges that ORNTIC, Shellpoint, and BONY themselves or vicariously through each other recorded or caused the recording of NOD 1 and SOT 2. *Id.* ¶¶ 63, 69.

Plaintiff alleges that, on December 17, 2014, she notified each Defendant and their counsel in writing that the DOT was counterfeit. *Id.* ¶ 15.A, n. 20. The recipients listed on the letter are Shellpoint, ORNTIC, Old Republic, and Old Republic Diversified Services, Inc. *Id.* Exh. 17.

Plaintiff alleges that, on December 19, 2014, another substitution of trustee ("SOT 3") was recorded, *id.* ¶ 23, through which Shellpoint substituted in ORNTIC as trustee, *id.* Exh. 20. Plaintiff alleges that, on the same day, a second Notice of Default and Election to Sell Under Deed of Trust ("NOD 2"), dated December 18, 2014, was recorded. *Id.* ¶ 22 and Exh. 19. Plaintiff alleges that, on April 30, 2015, a Notice of Trustee's Sale ("NOTS") was recorded. *Id.* ¶ 24, Exh. 21. Plaintiff alleges that ORNTIC, Shellpoint, and BONY recorded or caused the recording of SOT 3, NOD 2, and NOTS. *Id.* ¶¶ 38, 69.

Plaintiff alleges that each substitution and the notice of sale, while "appearing valid on its face" was in fact invalid and void because the underlying DOT was void. *Id.* ¶¶ 1, 18, 21, 23-24, 27-31.

Based on the above allegations, Plaintiff asserts that all Defendants violated 15 U.S.C. §§ 1635 (count 1) and 1641 (count 4), sections of the Truth in Lending Act ("TILA"). Plaintiff also alleges that all Defendants violated California's Unfair Practices Act ("UPA"), Cal. Bus. and Prof. Code § 17000 *et seq.* (count 5) and slandered her title (count 6), which she seeks to quiet (count 9). Plaintiff additionally asserts fraud (count 2), "quasi-contract/unjust enrichment/restitution" (count 7) and violations of the Rosenthal Debt Collection Practices Act ("RFDCPA" or "Rosenthal Act"), Cal. Civil Code § 1788 *et seq.,* and the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (count 3) against Old Republic and Shellpoint. Finally, Plaintiff asks the Court to cancel the instruments of Old Republic, MERS, and Shellpoint under Cal. Civil Code § 3412 (count 8).

United States District Court
Northern District of California

1    Defendants filed three motions to dismiss: MERS and Old Republic filed separate motions

2    on August 14, 2015 and August 20, 2015, respectively, while Shellpoint and BONY filed a

3    combined motion on August 20, 2015. Plaintiff opposed MERS' Motion to Dismiss on August 28,

4    2015, ECF 61, and the other Defendants' Motions to Dismiss on September 3, 2015, ECF 65

5    ("Shellpoint Opp."), ECF 66 ("Old Republic Opp."). The Court heard argument on these motions

6    on October 21, 2015.

7    **II.     LEGAL STANDARD**

8        **A.  Rule 12(b)(6)**

9        "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

10    claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation*

11    *Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d

12    729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as

13    true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.

14    *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court

15    need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or

16    unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

17    (internal quotation marks and citations omitted). Nor does must the Court "accept as true

18    allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v.*

19    *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). While a complaint need not contain

20    detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a

21    claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

22    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it

23    "allows the court to draw the reasonable inference that the defendant is liable for the misconduct

24    alleged." *Id.*

25        **B.  Rule 9(b)**

26        When a party pleads a cause of action for fraud or mistake, as here, it is subject to the

27    heightened pleading requirements of Rule 9(b). "In alleging fraud or mistake, a party must state

28    with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b)

United States District Court
Northern District of California

United States District Court
Northern District of California

1   demands that the circumstances constituting any alleged fraud be plead "specific[ally] enough to

2   give defendants notice of the particular misconduct . . . so that they can defend against the charge

3   and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.,* 567 F.3d 1120

4   (9th Cir. 2009) (citing *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). Claims of

5   fraud must be "accompanied by the who, what, when, where, and how of the misconduct alleged."

6   *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). "Rule 9(b) does not allow a complaint to

7   merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations

8   when suing more than one defendant ... and inform each defendant separately of the allegations

9   surrounding his alleged participation in the fraud.' " *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765

10  (9th Cir. 2007). "[W]hen asserting a fraud claim against a corporation, the plaintiff 'must allege

11  the names of the persons who made the allegedly fraudulent representations, [and] their authority

12  to speak.'" *Digby Adler Grp., LLC v. Mercedes-Benz U.S.A., LLC*, No. 14-CV-02349-TEH, 2015

13  WL 1548872, at *3 (N.D. Cal. Apr. 7, 2015).

## III.   REQUESTS FOR JUDICIAL NOTICE

15        Before addressing the substantive arguments before it, the Court considers the parties'

16  requests for judicial notice ("RJN"). Under Federal Rule of Evidence 201, facts appropriate for

17  judicial notice are those "not subject to reasonable dispute in that [they are] either (1) generally

18  known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready

19  determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R.

20  Evid. 201(b). This includes court records. *Bovarie v. Giurbino*, 421 F. Supp. 2d 1309, 1313 (S.D.

21  Cal. 2006) (citing *U.S v. Author Svcs*., 22 Inc., 804 F.2d 1520, 1522 (9th Cir. 1986)).

### A.   Defendants' Requests for Judicial Notice

23        MERS asks the Court to take judicial notice of thirteen exhibits: 1) Bankruptcy Schedules

24  filed in the bankruptcy of Kimberly Cox in the Northern District of California as Case No. 5:10-

25  bk-61716 (Exh. A); 2) Bankruptcy Discharge and Trustee's Notice of No Assets filed in the

26  bankruptcy of Kimberly Cox on January 27, 2012 (Exh. B); 3) Bankruptcy Adversary Complaint

27  filed by Kimberly Cox in the bankruptcy case, No. 5:10-bk-61716, as Adversary No. 11-5106

28  styled as Kimberly Cox vs. Recontrust Company, N.A. et al., (Exh. C); 4) Bankruptcy Order

Dismissing Adversary Action of Kimberly Cox (Exh. D); 5) Transcript of hearing on Motion to Dismiss as heard in Adversary Action of Kimberly Cox (Exh. E); 6) Fictitious Business Name Statement of Countrywide Home Loans, Inc. as America's Wholesale Lender as filed with the Clerk of Santa Cruz County (Exh. F); 7) Verified Second Amended Complaint filed in the Superior Court of Santa Cruz County, styled as Kimberly Cox vs. Reconstruct Company, N.A.; Mortgage Electronic Registration Systems, Inc.; Bank of New York Mellon fka The Bank of New York as Trustee for the Benefit of the Certificateholders CWMBS, Inc. CHL Mortgage Pass-through Certificates, Series 2005-2; Countrywide Home Loans, Inc.,; Bank of America Corporation, Case No. CV174201, (Exh. G); 8) Deed of Trust recorded in the Official Records of Santa Cruz County on December 21, 2004, as Document No. 2004-0089505 (Exh. H); 9) Substitution of Trustee and Assignment of Deed of Trust recorded in the Official Records of Santa Cruz County on December 7, 2009, as Document No. 2009-0056700 (Exh. I); 10) Substitution of Trustee recorded in the Official Records of Santa Cruz County on December 7, 2009, as Document No. 2009-0056700 (Exh. J); 11) Notice of Default recorded in the Official Records of Santa Cruz County on December 19, 2014, as Document No. 2014-0043352 (Exh. K);  and 12) Notice of Trustee's Sale recorded in the Official Records of Santa Cruz County on April 30, 2015, as Document No. 20154-0016503 (Exh. L). ECF 56.

Old Republic requests judicial notice of five exhibits: 1) Deed of Trust recorded December 21, 2004, in the Official Records of the Santa Cruz County Recorder's Office as Document No. 2001-0089505 (Exh. A) (same as MERS' Exh. H); 2) Substitution of Trustee and Assignment of Deed of Trust recorded December 7, 2009, in the Official Records of the Santa Cruz County Recorder's Office as Document No. 2009-0056700 ("Exh B"); 3) Substitution of Trustee recorded December 19, 2014, in the Official Records of the Santa Cruz County Recorder's Office as Document No. 2014-0043351 ("Exh. C"); 4) Notice of Default and Election to Sell Under Deed of Trust recorded December 19, 2014, in the Official Records of the Santa Cruz County Recorder's Office as Document No. 2014-0043352 ("Exh. D"); 5) Notice of Trustee's Sale recorded April 30, 2015, in the Official Records of the Santa Cruz County Recorder's Office as Document No. 2015-0016503 (Exh. E). ECF 52.

8

1   Plaintiff objects to both RJNs, arguing that noticing the exhibits would convert MERS' and

2   Old Republic's Motions to Dismiss into Motions for Summary Judgment. However, a court may

3   consider documents on a motion to dismiss without converting it into a motion for summary

4   judgment if the documents are judicially noticeable. *See United States v. Ritchie*, 342 F.3d 903,

5   907 (9th Cir.2003). Specifically, on a motion to dismiss, a federal court may take judicial notice of

6   "documents whose contents are alleged in a complaint and whose authenticity no party questions,

7   but which are not physically attached to the pleading." *Branch v.Tunnell*, 14 F.3d 449, 454 (9th

8   Cir. 2002), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119,

9   1124 (9th Cir. 2002). This rule serves to "prevent plaintiffs from surviving a Rule 12(b)(6) motion

10   by deliberately omitting documents upon which their claims are based." *Swartz v. KMPG LLC*,

11   476 F.3d 756, 763 (9th Cir. 2007).

12   Each of Defendants' proposed exhibits is a record either of a court or the Santa Cruz

13   County Recorder's Office and Plaintiff does not dispute their validity. In fact, a number of MERS'

14   and each of Old Republic's proposed exhibits is identical to exhibits attached to the FAC. MERS'

15   Exhibits A-L and Old Republic's Exhibits 1-5 are therefore judicially noticeable as documents

16   "capable of accurate and ready determination by resort to sources whose accuracy cannot

17   reasonably be questioned," *see* Fed. R. Evid. 201(b), and judicially noticing these exhibits does

18   not convert Defendants' motions into motions for summary judgment. Accordingly, the Court

19   GRANTS MERS' and Old Republic's RJN for Exhibits A-L and 1-5, respectively.

20   **B.      Plaintiff's Requests for Judicial Notice**

21   In support of her objection to MERS' RJN, Plaintiff requests judicial notice of four

22   exhibits: 1) Reconstruct Company, N.A.; Mortgage Electronic Registration Systems, Inc.; Bank of

23   New York Mellon fka The Bank of New York as Trustee for the Benefit of the Certificateholders

24   CWMBS, Inc. CHL Mortgage Pass-through Certificates, Series 2005-2; Countrywide Home

25   Loans, Inc.,; Bank of America Corporation's Memorandum of Points and Authorities in Support

26   of Demurrer to Second Amended Complaint of Cox, 2) Order Denying Defendants' Demurrer to

27   Plaintiff's Second Amended Complaint, 3) Order Granting Defendants' Motion to Dismiss

28   Adversary Proceedings, and 4) Bank of America, N.A. v. Linda A. Nash (2015) Case No. 59-

United States District Court
Northern District of California

9

1   2011-CA-004389, a judgment from Florida's Circuit Court of the Eighteenth Judicial Circuit. ECF

2   61-2 at 4.

3        Plaintiff also requests judicial notice of one exhibit in support of her objection to Old

4   Republic's RJN: Brief of Amicus Curiae Consumer Financial Protection Bureau in Support of

5   Appellant and Reversal, Case No. 10-56884 in the United States Court of Appeals for the Ninth

6   Circuit, Vien Phuong Thi Ho, Plaintiff-Appellant, v Reconstruct Company, N.A. et al.,

7   Defendants-Appellees, on appeal from the United States District Court for the Central District of

8   California. ECF 66-3.

9        Defendants do not object to Plaintiff's RJNs and the Court finds that, as court documents,

10  all of Plaintiff's requested exhibits are documents "capable of accurate and ready determination by

11  resort to sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b).

12  Accordingly, the Court GRANTS Plaintiff's requests to judicially notice Exhibits 1-4 in response

13  to MERS and Exhibit 1 in response to Old Republic.

14       The Court's grant of judicial notice extends to notice of the claims and disclosures made in

15  these documents, but not to the underlying facts.

16  **IV.    DISCUSSION**

17       Having addressed the RJNs, the Court now turns to the substance of the Motions to

18  Dismiss. Defendants raise numerous grounds for dismissal. The Court first considers MERS'

19  argument that Plaintiff lacks standing to bring the FAC in its entirety. See MERS Mot. at 5-8. The

20  Court then considers arguments against individual claims.

21     **A.  Standing**

22       MERS contends that Plaintiff lacks standing to bring this action because if any viable

23  claims exist they belong to the Chapter 7 estate and the Chapter 7 trustee is therefore the only one

24  with standing to bring them. MERS Mot. at 6. MERS argues that the claims belong to the estate

25  because they arose from pre-petition loans and events—specifically, Plaintiff's allegations that the

26  DOT was counterfeit and invalid when recorded in 2004 and that Plaintiff rescinded the loan in

27  2007. *Id.* at 6. In considering this argument, the Court considers the timing, but not the merits, of

28  the underlying counts.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

"When [an individual] declare[s] bankruptcy, all the 'legal or equitable interests,' he had in his property became the property of the bankruptcy estate and are represented by the bankruptcy trustee." *Turner v. Cook,* 362 F.3d 1219, 1225-26 (9th Cir. 2004) (quoting 11 U.S.C. § 541(a)(1)). "Causes of action are among such legal or equitable interests." *Id.* at 1226 (citing *Sierra Switchboard Co. v. Westinghouse Elec. Corp.,* 789 F.2d 705, 707 (9th Cir.1986)). *See also In re Polis,* 217 F.3d 899, 901 (7th Cir. 2000) (finding that estate property includes TILA claim). Thus, MERS is correct that any pre-petition claim that Plaintiff had regarding the Property would have been property of the estate.

Unless the bankruptcy court orders otherwise, property of the estate that is not abandoned or administered remains property of the estate. 11 U.S.C. § 554(d). To be either abandoned or administered, property must be properly scheduled. *Id.* §§ 554(c), 521(1); *see also Vreugdenhill,* 950 F.2d 524, 526 (8th Cir. 1991) (unless formally scheduled, property is not abandoned at the close of the estate, even if the trustee knew of the existence of the property when the case closed).

MERS argues that Plaintiff failed to properly schedule these claims as assets in her Bankruptcy Schedules although they existed at the time of filing and that, therefore, they could not have been administered or abandoned. MERS Mot. at 6. Plaintiff responds that she properly scheduled the purported debt as unsecured and that it was, thereafter, judicially discharged and abandoned back to Plaintiff. Opp. to MERS Mot. at 11, ¶ 27. However, "[c]auses of action are separate assets which must be formally listed." *Cusano v. Klein,* 264 F.3d 936, 947 (9th Cir. 2001) (citing *Vreugdenhill,* 950 F.2d at 526). "Simply listing the underlying asset [or liability] out of which the cause of action arises is not sufficient." *Id.* Thus, regardless of whether or not Plaintiff scheduled her debt properly, she failed to schedule any related claims as assets.

As a result, the Court agrees with MERS that any claim now before the Court that accrued pre-petition remains property of the estate and that the Chapter 7 trustee, rather than Plaintiff, has standing to bring those claims. *See In re Lopez,* 283 B.R. 22, 28 (9th Cir. BAP 2002). "The same result follows" for all claims "related to" Plaintiff's allegations that the DOT was void when recorded in 2004 and that her actions in 2007 rescinded her loan. *Cusano v. Klein,* 264 F.3d 936, 948-49 (9th Cir. 2001). This includes any claim that may exist against MERS, whose last alleged

act—recording the Substitution and Assignment—occurred on December 7, 2009. Accordingly, the Court GRANTS MERS' Motion to Dismiss,[5] with leave to amend only to the extent that Plaintiff can plead around this standing barrier.

However, the Court does not agree with MERS that Plaintiff lacks standing to bring the FAC in its entirety because Plaintiff challenges the remaining Defendants' actions not only on the basis of the invalidity of the 2004 DOT and the alleged 2007 rescission, but also on the basis that her debt was discharged in 2010 and that Shellpoint, BONY, and Old Republic continued to violate the law by attempting to collect on the debt. *See, e.g.,* FAC ¶¶ 32, 38, 45, 50, 86, 91. The Court finds that Plaintiff retains standing for any claims that accrued post-petition. *See Cusano* 264 F.3d at 947-48 (9th Cir. 2001) (finding that the plaintiff could not sue on claims that accrued pre-petition and were subject to scheduling but retained standing for post-petition claims).[6]

Applying this set of findings to the nine counts before it, the Court concludes that, to the extent that they exist, Plaintiff's first, third, and fourth counts belong to the estate because each accrued before November 2010. Plaintiff's first count accrued on August 6, 2007, one day after the date by which Plaintiff alleges Defendants should have returned any payments paid by Plaintiff following her alleged rescission of the DOT to be in compliance with TILA. *Id.* ¶ 35.

---

[5] MERS, Shellpoint, and BONY also argue that Plaintiff is estopped from bringing any pre-petition claims because she failed to list them as assets during her bankruptcy schedules. MERS Mot. at 7-8; Shellpoint Mot. at 18-19. Defendants rely heavily on *Hamilton v. State Farm Fire & Cas. Co.*, (2001) 270 F.3d 778 (9th Cir. 2001) to make this argument. *Hamilton* held that "a party is judicially estopped from asserting causes of action not . . . mentioned in the debtor's schedules or disclosure schedules" because, in doing so, a plaintiff necessarily asserts contradictory positions and obtains all of the benefits of bankruptcy without having to comply with his affirmative duty to disclose all assets. *Id.* at 784-85. Defendants argue that if Plaintiff is not estopped she will receive "the very type of impermissible windfall that *Hamilton* prevents." Shellpoint Mot. at 19. Because the Court finds that Plaintiff lacks standing to bring the pre-petition claims, the Court need not determine whether she is additionally estopped from bringing the same claims.

[6] Though not relevant to Plaintiff's standing, the Court notes that, in light of Defendants' contention that Plaintiff improperly scheduled her debt during her bankruptcy, it is unclear at this juncture whether the purported debt at issue was in fact discharged. In addition, the Court notes that the Explanation of Bankruptcy Discharge in a Chapter 7 Case provides that "a creditor may have the right to enforce a valid lien, such as a mortgage . . ., against the discharged [] debtor's property after the bankruptcy, if that lien was not avoided or eliminated in bankruptcy case." Defendants have not briefed either of these potential grounds for dismissing the remaining counts and so the Court does not reach them on these motions.

United States District Court
Northern District of California

1   Plaintiff's third count alleges that Old Republic and Shellpoint have violated the Rosenthal Act

2   and FDCPA by "telling Plaintiff she owes a debt she does not" and that the statutory exemptions

3   for trustees and servicers do not apply to them "because the purported DOT was void pursuant to

4   the Rescission." *Id.* ¶ 46; *see also id.* ¶ 41. This argument for their liability accrued pre-petition

5   and therefore belongs to the estate. Plaintiff's fourth count challenges Defendants' failure to notify

6   her of specific information, pursuant to § 1641, within 30 days of any assignment of her purported

7   loan, which allegedly occurred only once, in November 2009. FAC ¶¶ 55, 56. Accordingly, the

8   Court GRANTS the Motions to Dismiss counts one, three, and four with leave to amend.

9           Plaintiff's sixth count of slander of title against Old Republic and her seventh, eighth, and

10  ninth counts also belong to the estate because Plaintiff's attempts to plead around Defendant's

11  correct arguments for dismissal all rely on the 2007 rescission, as discussed in further detail

12  below. For example, Plaintiff concedes that trustees are exempt from such claims, but alleges that

13  Old Republic does not qualify because "in this case, the DOT [is] void pursuant to the Rescission"

14  in 2007. *Id.* ¶ 74. Because Plaintiff could have equally pled around this exemption—and those for

15  counts seven through nine, detailed below—before November 2010, these claims belong to the

16  estate. The Court GRANTS the Motions to Dismiss count six against Old Republic and counts

17  seven through nine with leave to amend.

18          In addition, the vast majority of Plaintiff's seventh count of quasi-contract/unjust

19  enrichment/restitution against Old Republic and Shellpoint also belongs to the estate because of

20  the alleged timing of her payments. Plaintiff alleges that she paid $106,862.44 in payments that

21  were not due. FAC ¶ 80. Of this total amount, only $39 was paid after November 2010. *See id.*

22  Exh. 25 (showing a $30 payment on February 26, 2014 and three $3 payments on March 6, 2014).

23  Thus, all but $39 of this count, if it survives at all, belongs to the estate.

24          Portions of Plaintiff's remaining—second, fifth, and sixth—counts similarly belong to the

25  estate, but Plaintiff retains standing to bring any claims based on Defendants' alleged activity

26  following the discharge of her debt in the bankruptcy case. Specifically, Plaintiff retains standing

27  to bring the portions of her second count—fraud against Old Republic and Shellpoint—that

28  alleges that they are misrepresenting themselves as the substituted trustee and servicer,

United States District Court
Northern District of California

13

respectively, of Plaintiff's purported debt because "any related 'debt' [was] discharged in Plaintiff's Ch. 7 Bankruptcy." *Id.* ¶ 38. And she also has standing to bring her sixth count against Shellpoint and BONY for slandering her title by recording NODs, SOTs, and a NOTS that contained false statements regarding the discharge of her debt.

Finally, Plaintiff's fifth count alleges that each of the Defendants has violated the UPA by committing a variety of underlying crimes or civil violations. The following claims existed pre-petition and belong to the estate, and the Court therefore GRANTS the Motions to Dismiss these claims with leave to amend: that the Defendants committed mortgage fraud in violation of California Penal Code § 532(f)(a)(4) and recording fraud in violation of California Penal Code § 115(a) by recording or causing the recording of the Substitution of Assignment in November 2009; that each Defendant failed to disclose the identity of the real lender, allegedly in violation of California Financial Code § 50505 *et seq.*; that each Defendant violated California Business and Professions Code § 17500 by attempting to dispose of the Property in civil conspiracy with the other Defendants by inducing the public to purchase the Property when no lien existed on the Property pursuant to the rescission. On the other hand, the following claims arose post-petition and so Plaintiff retains the ability to bring them: violations of California Penal Code §§ 532(f)(a)(4) and 115(a) through the 2014 recordings of Notices of Default and Substitutions of Trustee and the 2015 Notice of Trustee's Sale; Shellpoint and Old Republic's violations of California Civil Code § 2924.17(a) and (b) by continuing to record such documents after receiving notice from plaintiff of the inaccuracies in the documents; and violations of California Penal Code § 182 *et seq.* through an attempt to sell property that could not reasonably be sold in its present condition because it is encumbered.

The Court next considers Defendants' arguments regarding dismissal of the individual claims. While the Court need not reach the arguments regarding the claims dismissed for lack of standing, the Court briefly discusses them in order to offer Plaintiff some guidance should Plaintiff plead around her lack of standing.

### B.  First Count: TILA, 15 U.S.C. § 1635, Against All Defendants

Plaintiff alleges that she rescinded her loan in 2007 and that Defendants then failed to

United States District Court
Northern District of California

1  return her payments and terminate the security interest in violation of § 1635. As noted above, if

2  this count exists, it belongs to the estate. However, Defendants argue that the count does not exist

3  at all because it is time-barred.

4      MERS correctly notes that TILA provides for two different timelines depending on

5  whether or not a creditor provided the statutorily required material disclosures, defined as "the

6  required disclosures of the annual percentage rate, the finance charge, the amount financed, the

7  total amount of payments, the payment schedule, and the disclosures and limitations referred to

8  in" related regulations. 12 C.F.R. § 226.23 n. 48. If the creditor did provide them, a borrower has

9  three days to rescind; if the creditor failed to, the right of rescission lasts three years. 12 C.F.R. §

10  226.23(a)(3).

11      Plaintiff alleges that she had three years to rescind and that her rescission timely occurred

12  on July 13, 2007, when she sent a letter to AWL. FAC ¶¶ 15, 16. Shellpoint and BONY argue that

13  Plaintiff must file suit, and not simply send a letter, within three years in order to fall within the

14  statute of repose. Shellpoint Mot. at 9-10. While this reading is in line with prior decisions by this

15  district and the Ninth Circuit, it ignores the Supreme Court's recent holding that, under TILA, "so

16  long as the borrower notifies within three years after the transaction is consummated, his

17  rescission is timely. The statute does not also require him to sue within three years." *Jesinoski v.*

18  *Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 792 (2015). Thus, if Plaintiff qualifies for the

19  three year statute of repose, her rescission is not time-barred.[7]

20      However, MERS argues that Plaintiff has failed to allege that she falls within the three-

21  year statute of repose. MERS Mot. at 9-10. MERS contends that Plaintiff had only three days to

22  rescind because the letter asserts only that the DOT failed to accurately identify the lender and

23  neither the letter nor the FAC identifies any material nondisclosure. *Id.* Plaintiff responds that her

24  _____

25  [7] Shellpoint and BONY additionally argue that, even if Plaintiff's TILA rescission was timely, it
would still fail because she has offered no evidence that she tendered, or can tender, the

26  borrowed funds back to the lender. Shellpoint Mot. at 14. This argument, too, ignores controlling
precedent that has distinguished the cases on which Shellpoint and BONY rely. *See Merritt v.*

27  *Countrywide Fin. Corp.*, 759 F.3d 1023, 1033 (9th Cir. 2014) (holding that "plaintiffs can state a
claim for rescission under TILA without pleading that they have tendered, or that they have the

28  ability to tender, the value of their loan.").

United States District Court
Northern District of California

1  notice of rescission gives her three years because it referenced "the unlawful failure to give [her]

2  timely, accurate and proper material disclosures and notices under TILA." MERS Opp. at 13; *see*

3  *also* Compl. Exh. 13.

4      The Court agrees with MERS. "A pleading that offers 'labels and conclusions' or 'a

5  formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678

6  (quoting *Twombly*, 550 U.S. at 555). The FAC fails to allege facts identifying the purported

7  deficiencies that support Plaintiff's contention that MERS failed to make material disclosures thus

8  opening the way to the three years limitations period in which to rescind and her count is therefore

9  time-barred.[8] Accordingly, the Court GRANTS the Motions to Dismiss Plaintiff's first count with

10  leave to amend.[9]

11  **C.  Second Count: Fraud Against Old Republic and Shellpoint**

12      Plaintiff alleges that Old Republic and Shellpoint are engaging in fraud by calling

13  themselves the trustee and servicer, respectively, of Plaintiff's loan in NOD 2, SOT 3, and NOTS

14  because neither is authorized as such pursuant to the 2007 rescission and 2012 discharge. FAC ¶

15  38. As noted above, Plaintiff retains standing to bring the portions of this count that allege that Old

16  Republic and Shellpoint are misrepresenting themselves as the substituted trustee and servicer,

17  respectively, of Plaintiff's purported debt because "any related 'debt' [was] discharged in

18  Plaintiff's Ch. 7 Bankruptcy." FAC ¶ 38. However, Old Republic and Shellpoint argue that the

19  count is not sufficiently pled under Rule 9(b). Old Republic Mot. at 4-6, Shellpoint Mot. at 10-11.

20      The elements of fraud are "(a) misrepresentation (false representation, concealment, or

21  nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce

22

23  _____

24  [8] The parties did not brief nor does the Court decide whether the letter of rescission itself must identify the material nondisclosures.

25  [9] Though the Court dismisses this count in its entirety, the Court additionally addresses Old Republic's argument that the count, even if not time-barred, cannot apply to Old Republic, as a trustee, in order to provide Plaintiff with maximal guidance should she choose to amend. Old

26  Republic argues that TILA applies only to creditors, as defined in 12 C.F.R. § 226.2(a)(17), and that Old Republic, the alleged trustee, does not fit this definition. Old Republic Mot. at 3. Plaintiff

27  does not disagree with Old Republic's reading of the statute, but instead argues that Old Republic is not the properly substituted trustee. Old Republic Opp. at 6. As discussed at length above, Plaintiff lacks standing to make such a claim. Accordingly, the Court finds that Plaintiff's first

28  count, in addition to being time-barred, has failed to state a claim against Old Republic.

United States District Court
Northern District of California

1    reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Court*, 12 Cal. 4th

2    631, 638 (1996). Shellpoint argues that Plaintiff fails to allege any facts showing any of these

3    elements. Shellpoint Mot. at 10-11. Similarly, Old Republic argues that the FAC "fails to offer any

4    specific facts that any authorized representative for Old Republic made any fraudulent statements"

5    and is "completely devoid of what was said, by whom, when it was said and how it was

6    communicated." Old Republic Mot. at 6. Plaintiff responds that she not only provided details of

7    the fraud in ¶¶ 38 and 39 of the FAC, but also included the allegedly fraudulent statements as

8    exhibits to her complaint. *See, e.g.,* Shellpoint Opp. at 17.

9        The Court agrees with Defendants that Plaintiff has failed to plead this count with

10   sufficient particularity. Plaintiff fails to identify the "names of the persons who made the allegedly

11   fraudulent representations, [and] their authority to speak.'" *Digby*, 2015 WL 1548872, at *3. In

12   addition, Plaintiff does not even allege *which entity* recorded the challenged instruments, much

13   less when and how. Instead, Plaintiff alleges that each challenged instrument "was recorded," *see*

14   FAC ¶¶ 22-24, and later broadly asserts that Shellpoint and Old Republic "record[ed] or caus[ed]

15   them] to be recorded," *id.* ¶ 38. Accordingly, the Court GRANTS the Motions to Dismiss

16   Plaintiff's second count with leave to amend.

17       **D.  Third Count: FDCPA and Rosenthal Act Against Old Republic and Shellpoint**

18       Plaintiff alleges that Old Republic and Shellpoint violated the FDCPA and the Rosenthal

19   Act, which were enacted to prohibit debt collectors from engaging in abusive and unfair or

20   deceptive practices in the collection of consumer debts, *see* 15 U.S.C. § 1692; Cal. Civ. Code §

21   1788.1(c), by falsely telling her she owes a debt that she does not due to the rescission and the

22   discharge, *id.* ¶ 49, 51 (alleging violations of Cal. Civ. Code § 1788.17 and 15 U.S.C. §§

23   1692e(2)(A) and 1692e(10)). Plaintiff also alleges that Old Republic and Shellpoint violated 15

24   U.S.C. § 1692f(6)(A) by unconscionably attempting to collect the purported debt by dispossessing

25   Plaintiff of the Property without lawful authority, *id.* ¶ 52. Both Shellpoint and Old Republic argue

26   that they do not qualify as "debt collectors" under these statutes—Shellpoint because of the

27   activity in which it allegedly took part and Old Republic because of its role as trustee.

28       The Rosenthal Act defines "debt collector" as "any person who, in the ordinary course of

1   business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ.

2   Code § 1788.2(c). The Rosenthal Act specifically exempts trustees from liability. "California Civil

3   Code § 2924(b) provides a statutory exemption from the Rosenthal Act for a trustee under a deed

4   of trust" acting in good faith. *In re Landry,* 493 B.R. 541, 554 (Bankr. E.D. Cal. 2013). The

5   FDCPA defines "debt collector" as any person who uses interstate commerce "in any business the

6   principal purpose of which is the collection of any debts, or who regularly collects . . . debts owed

7   . . . another." 15 U.S.C. § 1692a. The FDCPA exempts activity that "is incidental to a bona fide

8   fiduciary obligation" or "concerns a debt which was not in default at the time it was obtained by

9   such person." *Id.* Old Republic and Shellpoint argue they fall within the exceptions and Shellpoint

10  additionally argues that foreclosure activity does not qualify as "debt collection."

11       "[T]he law is clear that foreclosing on a property pursuant to a deed of trust is not a debt

12  collection within the meaning of the RFDCPA or the FDCPA." *Gamboa v. Tr. Corps*, 2009 WL

13  656285, at *4 (N.D. Cal. 2009). Thus, Shellpoint argues, to the extent that Plaintiff's claim is

14  predicated on foreclosure-related activity—"which is the only possible reading of the

15  allegations"—the claim fails as a matter of law. Shellpoint Mot. at 13. However, Plaintiff responds

16  that Shellpoint and Old Republic are not exempt from these statutes because the DOT is "void

17  pursuant to the Rescission" and, therefore, they are not the duly-substituted servicer and trustee,

18  respectively. FAC ¶¶ 41, 46. As noted above, any such attempt to plead around the statutory

19  exemptions on the basis of the 2007 rescission belongs to the estate. If Plaintiff could allege that

20  these Defendants are violating the Rosenthal Act and/or the FDCPA by continuing to attempt to

21  foreclose on the Property after it was properly discharged in the 2012 bankruptcy, however, such a

22  claim would not belong to the estate.[10]

23       Shellpoint additionally argues that this count fails to state a claim because the allegations

24  "simply parrot[] the language of the statutes" and fail to provide sufficient factual detail as to the

25

26  _____

[10] Paragraph 45 of the Complaint, which states that "any debt remaining [was] discharged in
27  Plaintiff's Ch[apter] 7 Bankruptcy and neither [Defendant was] acting therefore in the authorized
    capacity each claims" comes close such an allegation. In further paragraphs, however, Plaintiff
28  alleges that the Defendants' foreclosure activity was unlawful only "because the purported DOT
    was void pursuant to the Rescission." FAC ¶¶ 41, 46.

United States District Court
Northern District of California

alleged debt collection activity. Shellpoint Mot. at 11. As above, the Court agrees with Shellpoint because Plaintiff fails to even identify which Defendant "falsely t[old] Plaintiff she owes a debt she does not." As for the unconscionability allegation, Plaintiff does not identify the "nonjudicial action" Old Republic and Shellpoint took "to effect dispossessing Plaintiff of her property," FAC ¶ 52, nor does she allege that the Property was sold. *See* Shellpoint Mot. at 19. Accordingly, the Court GRANTS the Motions to Dismiss Plaintiff's fourth count with leave to amend.

### E.  Fourth Count: TILA, 15 U.S.C. § 1641 Against All Defendants

Upon the sale, transfer, or assignment of a mortgage loan, 15 U.S.C. § 1641(g)(1) requires "the new owner or assignee of the debt [to] notify the borrower in writing of such transfer." Such notification must be made "not later than 30 days after the date on which a mortgage loan is . . . assigned." *Id.* Plaintiff alleges that MERS assigned the DOT to BONY on November 13, 2009, FAC ¶¶ 18, 57, but claims that she never received such notification, *id.* ¶ 56. As noted above, if this count exists, it belongs to the estate. However, MERS, Shellpoint, and Old Republic argue that the count does not exist at all with respect to them because the statute does not govern their alleges roles with respect to Plaintiff's purported debt.

Though alleged against all Defendants, this count can only possibly exist against BONY because the statute governs only "the new owner or assignee of the debt." *See* MERS Mot. at 12, Old Republic Mot. at 7, Shellpoint Mot. at 13-14. Accordingly, the Court GRANTS the Motions to Dismiss Plaintiff's fifth count against MERS, Shellpoint, and Old Republic with leave to amend.

BONY argues that Plaintiff's claim fails against it as well because it does not plead detrimental reliance on any allegedly inadequate disclosure—also a necessary element of any claim for actual damages based upon an alleged TILA violation. *See Gold Country Lenders v. Smith,* 289 F.3d 1155, 1157 (9th Cir. 2002) ("We join with other circuits and hold that in order to receive actual damages for a TILA violation, . . . a borrower must establish detrimental reliance."). Plaintiff responds that her allegations that she continued to make payments following the rescission shows detrimental reliance. Shellpoint Opp. at 15. However, Plaintiff does not allude to these payments in her § 1641 claim, instead alleging economic damages from diminished

property value and unmarketable title. FAC ¶ 58. More importantly, Plaintiff does not allege that these damages resulted from detrimental reliance on the alleged lack of § 1641(g) disclosures, nor is it clear to the Court how they could have. Therefore, the Court agrees with BONY that Plaintiff has failed to allege detrimental reliance on this allegedly inadequate disclosure. Accordingly, the Court GRANTS BONY's Motion to Dismiss Plaintiff's fifth count with leave to amend.

### F.   Fifth Count: UPA Against All Defendants

As discussed above, Plaintiff alleges that each Defendant violated California's Unfair Practices Act, which prohibits any unfair, unlawful, or deceptive acts, by violating various California laws, specified above, through recording the Substitution and Assignment, SOTs, NODs, and NOTS, failing to disclose the identity of the real lender, and conspiring to induce the public to purchase the Property.

Defendants argue that, even if Plaintiff has standing to bring this count, it cannot survive because she has failed to allege any lost money or property as required by California Business & Professions Code § 17204. *See* MERS Mot. at 14, Shellpoint Mot. at 14-15. Under § 17204, added to restrict the flood of private causes of action under § 17200, a plaintiff must make a two-fold showing to establish standing: that she suffered a direct injury and lost money or property as a result of the alleged unfair competition. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 325 (2011). Shellpoint argues that Plaintiff has failed to make this showing because loan payments and related charges or fees cannot suffice as economic injury they constitute the performance of pre-existing contractual obligations. *See Auerbach v. Great W. Bank*, 74 Cal. App. 4th 1172, 1185 (1999). Plaintiff responds that she additionally alleged diminution in the value of the Property, which does suffice under *Kwikset.*

Having considered the California Supreme Court's decision in *Kwikset*, the Court agrees with Plaintiff. *Kwikset* states

> There are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary.

United States District Court
Northern District of California

United States District Court
Northern District of California

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011). The Court finds that Plaintiff need not assert loss of her Property under this standard; rather, as she argues, an allegation of diminution in its value should suffice to survive a motion to dismiss.

Old Republic additionally argues that this count fails because UPA applies only to business "practices," which the California Supreme Court has held "requires, at a minimum, ongoing conduct." *Mangini v. Aerojet-Gen.Corp.*, 230 Cal. App. 3d 1125, 1156 (1991) (citing *State of California ex rel. Van de Kamp v. Texaco, Inc.*, 46 Cal. 3d 1147, 1169-1170 (1988)). "Relief under section 17200 is unavailable to remedy past misconduct." *Id.* While Plaintiff fails to address this argument in her opposition, the Court finds that Plaintiff has alleged that Defendants misconduct is ongoing because the allegedly improper instruments remain recorded.

More convincingly, Defendants argue that Plaintiff cannot simply lump all Defendants together without identifying which is responsible for her alleged injuries. Old Republic Mot. at 8-9, Shellpoint Mot. at 14-15. Old Republic argues that, as a matter of law, it cannot be liable for the alleged conduct of the other defendants, nor can its liability under the UPA be predicated on vicarious liability. Shellpoint argues that Plaintiff must allege which Defendant is responsible for which portion of her damages.

Old Republic directs the Court to *Emery v. Visa Internat. Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002), which explained that "[t]he concept of vicarious liability has no application to actions brought under the unfair business practices act." *Emery v. Visa Internat. Serv. Ass'n*, 95 Cal. 4th 952, 960 (2002) (quoting *People v. Toomey*, 157 Cal.App.3d 1, 14 (1984)). Instead, "[a] defendant's liability must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices that are found to violate section 17200 or 17500." *Id.* (quoting *Toomey*, 157 Cal. App. 3d at 15). Federal pleading standards similarly require a plaintiff to allege which defendant is responsible for her injuries. *See Fortaleza v. PNC Fin. Services Group, Inc.*, 642 F. Supp. 2d 1012, 1019-20 (N.D. Cal. 2009).

Furthermore, Plaintiff's UPA claims sound in fraud and therefore the heightened pleading standards of Rule 9(b) apply. See *Vess v. Ciba–Geigy Corp.*, 317 F.3d 1097, 1106–08, 1110 (9th Cir. 2003); *see also Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1122 (9th Cir. 2009).

United States District Court
Northern District of California

Plaintiff responds that she has specifically identified the conduct of each defendant in ¶ 63 of the FAC. However, as discussed above, Plaintiff fails to identify which Defendants recorded or caused the recording of the documents—the alleged misconduct upon which nearly every claim is based. Instead, Plaintiff alleges that Old Republic "itself, and vicariously through or at the direction of" Shellpoint and BONY, that Shellpoint "itself or by directing" Old Republic, and that BONY "vicariously through" Shellpoint or Old Republic "record[ed] or caus[ed] to be recorded" the documents. Similarly, Plaintiff alleges that MERS "record[ed] or caus[ed] to be recorded" the Substitution and Assignment. Similarly, with regard to their failure to disclose the identity of the lender, Plaintiff alleges only that Old Republic "itself, and vicariously through or at the direction of" Shellpoint and BONY "is responsible" for this violation. Plaintiff also alleges that the Defendants were "in civil conspiracy with" one another to improperly dispose of the Property. In light of the vagueness of these allegations, the Court agrees with Defendants that Plaintiff has failed to sufficiently identify which Defendant is responsible for which violation and/or injury and how. Accordingly, the Court GRANTS the Motions to Dismiss the fifth count with leave to amend.

### G. Sixth Count: Slander of Title Against All Defendants

"To plead a claim for slander of title, a plaintiff must allege: (1) a publication, (2) which is without privilege or justification and thus with malice, express or implied, (3) is false, either knowingly so or made without regard to its truthfulness, and (4) causes direct and immediate pecuniary loss." *Howard v. Schaniel*, 113 Cal. App. 3d 256, 263-64 (1980). Here, Plaintiff alleges slander of title based on the recording of the Substitution and Assignment, NODs, SOTs, and NOTS and their continued maintenance on the record. FAC ¶¶ 69, 71. Defendants argue that the recording of such notices is privileged and cannot be the basis of a tort claim unless malice is alleged. *See* Shellpoint Mot. at 16, Old Republic Mot. at 9-10, MERS Mot. at 15-16.

Under California Civil Code § 2924(d), recording notices of default and trustee sale are privileged acts. *See* Civ. Code §§ 2924(a) and (d). Such acts cannot form the basis of a tort claim, including slander of title unless malice is alleged. *See Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 333-34 (2008).

United States District Court
Northern District of California

1   Plaintiff responds that the slander count rests not on her allegation that the notices were

2   recorded, but that they remain recorded. However, "failing to rescind [the notices] is no less

3   privileged, flowing as it does from the statutorily protected act of the recording." *Id.* at 343. This is

4   so even where the defendant has been shown that the debt has been satisfied. *Id.* (finding failure to

5   rescind privileged even after defendant had been shown that the promissory note had been

6   satisfied). Accordingly, the Court GRANTS the Motions to Dismiss the sixth count with leave to

7   amend.

8   **H.  Seventh Count: Quasi-contract/Unjust Enrichment/Restitution Against Old**

9   **Republic and Shellpoint**

10   Plaintiff alleges a claim of "quasi contract/unjust enrichment/restitution" against Old

11   Republic and Shellpoint for the $106,862.44 of loan payments she made that she now alleges were

12   never due pursuant to the 2007 rescission. FAC ¶ 80. As discussed above, this claim, to the extent

13   that it exists, belongs to the estate. However, Old Republic and Shellpoint argue that it does not

14   exist at all. Old Republic contends that unjust enrichment is not a separate cause of action. Old

15   Republic Mot. at 10-11. Both defendants argue that unjust enrichment is inapplicable here because

16   defendants have merely obtained that to which a contract between the parties entitled them. *Id;*

17   Shellpoint Mot. at 16-17.

18   Old Republic's first argument that California does not provide a quasi-contract claim for

19   relief ignores the split among California courts regarding this question. *See Cheung v. Wells Fargo

20   Bank*, N.A., 987 F. Supp. 2d 972, 979 (N.D. Cal. 2013) (citing *Davenport v. Litton Loan

21   Servicing,* LP, 725 F.Supp.2d 862, 885 (N.D.Cal.2010) (quasi contract can be its own basis for

22   relief) and *Bernardi v. JPMorgan Chase Bank, N.A.*, 2012 WL 2343679 (N.D. Cal. June 20, 2012)

23   (holding unjust enrichment is not an independent claim for relief)).

24   Defendants' second argument that a quasi-contract claim cannot exist where the parties are

25   acting pursuant to a valid express contract is more persuasive. *Id.* at 979-980; *Jones v. Wells

26   Fargo Bank,* 112 Cal. App. 4th 1527, 1541 (2003) (holding that, where plaintiff alleged no facts to

27   show unjust enrichment except for a note and forbearance agreement between the parties,

28   defendants would not be unjustly enriched "by receiving contingent interest to which they are

legally entitled."). Plaintiff responds that the contract is not valid pursuant to the rescission. Shellpoint Opp. at 18. As discussed above, Plaintiff lacks standing to make this argument and the Court therefore does not consider its merits. Accordingly, the Court GRANTS the Motions to Dismiss the seventh count with leave to amend. To the extent that Plaintiff wishes to claim the $39 she made in payments after initiating her bankruptcy action, she may do so upon alleging that the payments were not due pursuant to the discharge, rather than the rescission.

## I.   Eighth and Ninth Counts: Cancellation of Instruments Against Old Republic, Shellpoint, and MERS and Quiet Title Against All Defendants

Plaintiff's eighth count aims to cancel each of the notes allegedly recorded regarding Plaintiff's purported debt. To state a cancellation claim, a plaintiff must allege that: (1) there is a reasonable apprehension that the instrument left standing might cause serious injury; (2) the instrument is invalid on its face; (3) the instrument is void or voidable; (4) the instrument was in existence or under the defendant's possession and control when the action was filed; and (5) if the interest is voidable rather than void, that plaintiff acted promptly to rescind. Civ. Code §§ 3412, 3413; *Hironymous v. Hiatt*, 52 Cal. App. 727, 731 (1921). Plaintiff's final count seeks to quiet title to the Property.

Defendants argue that Plaintiff has failed to state either claim because she has not alleged that she has tendered the full amount owed. MERS Mot. at 16-17, Old Republic Mot. at 11. "In obtaining rescission or cancellation, the rule is that the complainant is required to do equity, as a condition to his obtaining relief, by restoring to the defendant everything of value which the plaintiff has received in the transaction." *Fleming v. Kagan*, 189 Cal. App. 2d 791, 796 (1961); *see also Karlsen v. Am. Sav. & Loan Ass'n*, 15 Cal. App. 3d 112, 117 (1971). Similarly, "a mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee." *Miller v. Provost*, 26 Cal. App. 4th 1703, 1707 (1994); *see also Kelley v. Mortg. Elec. Registration Sys., Inc.,* 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009) While, as discussed above, TILA has extended the timing of this common law practice for TILA rescission claims, it continues to govern common law claims.

Plaintiff responds that the tender requirement for both claims does not apply here because

24

the purported loan is already void pursuant to the rescission. While Plaintiff is correct that California courts have held that the tender rule does not apply when the plaintiff alleges the title documents are void, *see Cheung,* 987 F. Supp. 2d at 980 (citing *Fleming v. Kagan,* 189 Cal. App. 2d 791 (1961)), this argument belongs to the estate. Accordingly, the Court GRANTS the Motions to Dismiss Plaintiff's eighth and ninth counts with leave to amend.[11]

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motions to Dismiss the FAC are GRANTED, with leave to amend. Any amended complaint shall be filed **on or before March 7, 2016.**

Dated: January 25, 2016

BETH LABSON FREEMAN
United States District Judge

---

[11] Old Republic makes several additional arguments premised on the contention that Plaintiff can only demand quiet title if she alleges that the initial loan was fraudulent. This is a misreading of the law, which requires only that the instrument is void or voidable and invalid on its face.