UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KIMBERLY COX,<br><br>  Plaintiff,<br><br>  v.<br><br>OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY, et al.,<br><br>  Defendants. | Case No.  15-cv-02253-BLF<br><br>**ORDER RE MOTIONS TO DISMISS AND DENYING MOTIONS FOR DEFAULT JUDGMENT**<br><br>[Re:  ECF 95, 99, 117, 135, 137, 138] |

Plaintiff brings this action to rid herself of a purported mortgage refinancing loan. The Court previously dismissed her complaint for seeking to bring claims that she had failed to properly schedule in her Chapter 7 bankruptcy, but granted leave to amend. *See* ECF 91. Plaintiff has now filed a prolix 91 page, 218 paragraph amended complaint. In four separate motions pled by Old Republic Default Management Services, Old Republic National Title Insurance Company, Shellpoint and Bank of New York, and MERS, Defendants[1] argue that she again exclusively asserts claims that she failed to schedule in her bankruptcy. Defendants therefore ask the Court to dismiss the complaint with prejudice. For the reasons stated below, the Court GRANTS Defendants' motions to dismiss, docketed at ECF 99, 117, and 135, without leave to amend.[2]

---

[1] Defendants are New Penn Financial, LLC, d/b/a Shellpoint Mortgage Servicing ("Shellpoint"), Mortgage Electronic Registration Systems, Inc. ("MERS"), Old Republic National Title Insurance Company ("ORNTIC"), and The Bank of New York Mellon fka The Bank of New York as Trustee for The Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2005-02 Mortgage Pass-Through Certificates, Series 2005-02 ("BONY").

[2] The Court DENIES the motion to dismiss filed by Old Republic Default Management Services, a Division of Old Republic National Title Company ("ORDMS") at ECF 95. As discussed further below, ORNTIC, and not ORDMS, is the proper party defendant and the Court therefore considers only ORNTIC's motion at ECF 135. Though Plaintiff objects to ORNTIC's motion as late-filed, the Court OVERRULES the objection, finding no prejudice to Plaintiff because she filed a full opposition to ORNTIC's motion. *See* ECF 139. The Court also OVERRULES Plaintiff's objection

## I. BACKGROUND

Having detailed Plaintiff's allegations in its first Order Granting Motions to Dismiss ("First Dismissal Order"), *see* ECF 91, the Court briefly summarizes Plaintiff's amended allegations below. Plaintiff alleges that she acquired the property located at 131 Sutphen Street in Santa Cruz, CA ("Property") and recorded the deed on September 1, 1998. Second Amended Compl. ("SAC") ¶ 11, ECF 93. Though Plaintiff is now a citizen of Nevada, she alleges that, at all relevant times, the Property was her principal residence. *Id.* ¶ 41.

On December 14, 2004, Plaintiff secured a $544,000 refinancing loan with a deed of trust ("DOT") on the Property. *Id.* ¶¶ 12-13, 18. The DOT was recorded on December 21, 2004 and named non-party America's Wholesale Lender as the lender. *Id.* ¶¶ 12-13. Plaintiff alleges that, though $544,000 was credited primarily to refinance a previous loan, neither AWL nor any of the Defendants provided that funding. *Id.* ¶ 18. Rather, Plaintiff alleges, AWL did not exist as named (i.e., as a New York corporation) and the actual lender was never disclosed. *Id.* ¶¶ 12, 19.

Nevertheless, for the purposes of her Truth in Lending Act ("TILA") claim, Plaintiff alleges that AWL was the creditor and that AWL violated TILA by failing to provide her with the required disclosures. *Id.* ¶¶ 2, 20. Plaintiff alleges that she therefore properly rescinded the refinancing loan by mailing a notice of rescission to AWL on July 13, 2007. *Id.* ¶ 16. AWL then "failed to comply with its duties under 15 U.S.C. § 1635(b)" or to challenge the rescission within 20 days of receiving the rescission. *Id.* ¶ 20.

On December 7, 2009, non-party Reconstruct Company requested that a Substitution of Trustee and Assignment of Deed of Trust ("SOT and Assignment")[3] be recorded. *Id.* ¶ 31. Plaintiff alleges that the SOT and Assignment was invalid and void because the Defendants and AWL were not what they purported to be (i.e., the lender, assignee, trustee, or beneficiary of the loan) and because Plaintiff had previously rescinded the DOT. *Id.* ¶ 32. In March 2010,

---

to Shellpoint and BONY's motion as late-filed, instead finding that Shellpoint and BONY timely filed their motion on March 21, 2016, *see* ECF 97, and then filed a motion to correct a typographical error the following day.
[3] Plaintiff refers to the Substitutions of Trustee as "SOTs" and the Notices of Default as "NODs." The Court follows Plaintiff's naming convention.

Reconstruct Company recorded a Notice of Trustee's Sale of the Property. *Id.* ¶ 29.[4]

On November 12, 2010, Plaintiff filed for Chapter 7 bankruptcy. *Id.* ¶ 22; *see also* Case No. 5:10-bk-61716. Plaintiff scheduled the Property and the loan at issue as unsecured, nonpriority, contingent, unliquidated, and disputed. SAC ¶ 22.

Plaintiff also filed an adversary proceeding in bankruptcy court against MERS and other entities who are not parties to this action to determine whether or not the purported refinancing debt was secured. *Id.* ¶ 22; *see also* Case No. 5:11-ap-05106. Plaintiff did not mention the alleged rescission. SAC ¶¶ 22-23. The bankruptcy court dismissed the adversary proceeding for lack of subject matter jurisdiction because only the Chapter 7 trustee had standing to pursue Plaintiff's claims at that time. *Id.* ¶ 22.

In January 2012, Plaintiff's bankruptcy case was closed. Plaintiff alleges that, at that point, the Property was abandoned back to Plaintiff and the purported refinancing debt was deemed unsecured and void by operation of law. *Id.* ¶ 25.

In May 2012, Plaintiff filed a lawsuit in Santa Cruz Superior Court, Case No. CV 174201. *Id.* ¶ 29. Plaintiff alleges that, with trial looming, Reconstruct Company recorded a Notice of Rescission and Declaration of Default and Demand for Sale and of Notice of Default and Election to Sell on January 23, 2014. *Id.* ¶ 29. Plaintiff alleges that, because this effectively ended the attempts to foreclose on the Property, Plaintiff dismissed her state case without prejudice and her appeal of the bankruptcy adversary ruling. *Id.* ¶ 29.

But Plaintiff alleges that Defendants' wrongful activities did not end there. Instead, Plaintiff alleges that Defendants collectively recorded or "caused to be recorded" the following: a Notice of Default and Election to Sell Under Deed of Trust ("NOD 1") and second Substitution of Trustee ("SOT 2") on October 28, 2014, *id.* ¶¶ 33-34; a second Notice of Default ("NOD 2") and third Substitution of Trustee ("SOT 3") on December 19, 2014, *id.* ¶¶ 35-36, and a second Notice

---

[4] Plaintiff alleges that this 2010 notice was wrongfully recorded because it ignored Plaintiff's bankruptcy discharge. SAC ¶ 29. However, this appears to be inconsistent with Plaintiff's allegation that the bankruptcy discharge did not occur until 2012. *Id.* ¶ 25.

3

of Trustee's Sale on April 30, 2015, *id.* ¶ 37.[5] Plaintiff alleges that the documents wrongfully identified Shellpoint and MERS as the beneficiary, MERS as the nominee, ORNTIC as the trustee, and BONYMCorp as the assignee of the DOT. *Id.* ¶¶ 32, 84. Plaintiff alleges that each of these documents was invalid and void because Plaintiff had rescinded the DOT on which they were based. *Id.* ¶¶ 33-37.

Based on the above allegations, Plaintiff asserts: (1) cancellation of invalid instruments; (2) slander and disparagement of the title to Plaintiff's property against all Defendants; (3) fraud against ORNTIC and Shellpoint; (4) violation of the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*, and the Rosenthal Debt Collection Practices Act ("RFDCPA" or "Rosenthal Act"), Cal. Civil Code § 1788 *et seq*, against ORNTIC and Shellpoint; (5) violation of California's Unfair Practices Act ("UPA"), Cal. Bus. & Prof. Code § 17000 *et seq.*, against ORNTIC, Shellpoint, and MERS; and (6) a new 42 U.S.C. § 1983 claim against all Defendants.

## II. MOTIONS TO DISMISS

### A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court "need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

---

[5] Plaintiff's allegations regarding these events are written exclusively in the passive voice and therefore fail to specify who did any of the challenged acts. Read in combination, the clearest theory that emerges is that ORNTIC and Shellpoint conspired to have an allegedly non-existent entity, ORDMS, request the recording of each NOD and the second Notice of Trustee's Sale; Shellpoint recorded each SOT; and MERS "caused the other [Defendants] to record" the purportedly invalid documents." SAC ¶¶ 90, 110, 112, 123, 173, 186.

4

When a party pleads a cause of action for fraud or mistake, as here, it is subject to the heightened pleading requirements of Rule 9(b). Rule 9(b) demands that the circumstances constituting any alleged fraud be pled "specific[ally] enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.,* 567 F.3d 1120 (9th Cir. 2009) (citing *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007). Claims of fraud must be "accompanied by the who, what, when, where, and how of the misconduct alleged." *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

**B. Discussion**

Shellpoint, BONY, and MERS argue that Plaintiff lacks standing to bring this case.[6] Because the Court previously dismissed Plaintiff's complaint for lack of standing and because the argument extends to each of Plaintiff's claims, including those alleged against ORNTIC as discussed further below, the Court begins there.

In the First Dismissal Order, the Court determined that Plaintiff lacked standing to bring claims related to her alleged rescission because any such claims accrued pre-petition and therefore now belong to the Chapter 7 trustee. *See* First Dismissal Order at 11-12. Because Plaintiff asserted that she could plead around this deficiency, the Court granted leave to amend all claims.

Shellpoint, BONY, and MERS contend that Plaintiff has failed to cure this deficiency, instead squarely predicating each claim in the SAC on the alleged rescission. MERS argues that,

---

[6] Each Defendant has filed a RJN, *see* ECF 98, 118, 136, seeking judicial notice of the same exhibits offered in the first round of motions to dismiss. Plaintiff again objects to these requests on the same bases as she asserted in the first round. As before, the Court finds that these exhibits are documents "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," *see* Fed. R. Evid. 201(b), and finds that judicially noticing them does not convert Defendants' motions into motions for summary judgment. *See* First Dismissal Order at 7-9. Therefore, as before, the Court GRANTS judicial notice of the claims and disclosures made in Shellpoint and BONY's Exhibits A-L, MERS' Exhibits A-L (which are identical), and ORNTIC Exhibits A-E, but does not grant judicial notice as to the underlying facts.

Plaintiff has amended her allegations only to offer legal argument to challenge the Court's findings in the First Dismissal Order. MERS Mot. at 1, ECF 117. Therefore, as in the first round of motions to dismiss, Defendants argue that, because Plaintiff failed to properly schedule these claims in her 2010 bankruptcy, they now belong to the Chapter 7 trustee. *Id.* at 6; *see also* Shellpoint Mot. at 5, ECF 99.

As the Court explained in the First Dismissal Order, "when [an individual] declare[s] bankruptcy, all the 'legal or equitable interests,' he had in his property became the property of the bankruptcy estate and are represented by the bankruptcy trustee." *Turner v. Cook*, 362 F.3d 1219, 1225-26 (9th Cir. 2004) (quoting 11 U.S.C. § 541(a)(1)). "Causes of action are among such legal or equitable interests." *Id*. at 1226 (citing *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707 (9th Cir.1986)); *see also In re Polis*, 217 F.3d 899, 901 (7th Cir. 2000) (finding that estate property includes TILA claim). Thus, any pre-petition claims that Plaintiff had regarding the Property were property of the estate. Pursuant to 11 U.S.C. § 554(d), claims remain property of the estate unless the bankruptcy court orders otherwise or the claims are abandoned or administered. In order to have been abandoned or administered, Plaintiff's claims must have been properly scheduled. 11 U.S.C. §§ 554(c), 521(1); *see also Vreugdenhill v. Navistar Int'l Transp. Corp.*, 950 F.2d 524, 526 (8th Cir. 1991).

Plaintiff does not contest the fact that each of the claims in the SAC arises from the purported rescission,[7] but she argues that Defendants' argument nevertheless fails because she could not have listed the rescission in her bankruptcy schedules as the rescission was a remedy (for AWL's alleged TILA violation), and not itself a claim. *See, e.g.,* Pl.'s Opp. to MERS Mot. at

---

[7] The Court notes that the First Dismissal Order suggested that Plaintiff's allegations in the FAC could also have been read to challenge the SOTs, NODs, and other documents as invalid because they ignored the discharge of Plaintiff's debt in 2012. This theory appears less central to the SAC, as Plaintiff now consistently challenges the documents because "the purported DOT relied on for . . . authority . . . was absolutely void by operation of law pursuant to the Rescission," without mention of the discharge. *See, e.g.,* SAC ¶¶ 32-37. Moreover, the Court notes that any allegations of wrongdoing based on the discharge would have failed to state a claim because "discharge in a Chapter 7 liquidation only extinguishes the 'personal liability of the debtor' and the creditor's right to foreclose on the mortgage survives or passes through the bankruptcy." *U.S. Bank N.A. v. Friedrichs*, 924 F. Supp. 2d 1179, 1187 (S.D. Cal. 2013) (quoting *Johnson v. Home State Bank*, 501 U.S. 78, 82-83 (1991)).

1    8, ECF 125. This argument misreads Defendants' challenge. Defendants correctly assert—as the
2    Court previously determined—that Plaintiff had to schedule any claims "related to" her alleged
3    rescission, not the rescission itself, in order to retain standing to assert them. *See Cusano v. Klein*,
4    264 F.3d 936, 948-49 (9th Cir. 2001).[8]

5    Plaintiff next argues that, even though the rescission was effective by operation of law in
6    2007, the claims she now brings did not accrue until 2015, when the Supreme Court decided
7    *Jesinoski v. Countrywide Home Loans*, --- U.S. ---, 135 S.Ct. 790 (2015), and that she therefore
8    could not have scheduled them in her bankruptcy. *See, e.g.,* Pl.'s Opp. to MERS Mot. at 2, 5.
9    Shellpoint and BONY disagree with this reading of *Jesinoski*, instead arguing that, as alleged
10   throughout the SAC, Plaintiff's claims accrued in 2007. While the Court's First Dismissal Order
11   was premised on implicit agreement with Defendants' reading of *Jesinoski*, the issue was not
12   explicitly raised by the parties in the prior round of motions and so the Court addresses it
13   explicitly below.

14   In *Jesinoski,* two borrowers mailed their creditors a letter of rescission within three years
15   of taking out their loan, but did not file suit for a declaration of rescission until more than four
16   years had passed from the loan's consummation. 135 U.S. at 791. The creditor defendants argued
17   that the litigation was barred by TILA's three year statute of limitations. The Supreme Court
18   disagreed, holding that TILA's language "leaves no doubt that rescission is effected when the
19   borrower notifies the creditor of his intention to rescind. It follows that, so long as the borrower
20   notifies within three years after the transaction is consummated, his rescission is timely." *Id.* at
21   792. In other words, under *Jesinoski*, as long as a borrower sends a notice of rescission within
22   three years, s/he is safely within the statute of limitations for filing suit at any point after.

23   Applying that holding here, the Court agrees with Defendants: *Jesinoski* makes clear that
24   Plaintiff could have asserted the claims at issue as early as 2007 and retained the ability to do so in
25   2010, when she filed for bankruptcy. Therefore, as before, the Court finds that Plaintiff must have

---

[8] Plaintiff also argues that Defendants lack standing to challenge her rescission. *See* Pl.'s Opp. to MERS Mot. at 22. The Court does not reach the merit of this argument as it, too, misconstrues Defendants' position, which does not challenge the validity of the purported rescission.

properly scheduled the claims at issue in order to now have standing to bring this case.

Plaintiff additionally argues that she could not have raised her claims in the bankruptcy because she knew that, given the state of Ninth Circuit law at that time, claims brought in 2010 concerning a loan that was consummated in 2004 would have been considered time-barred. This argument ignores a debtor's obligation to disclose all assets to the bankruptcy court. *See* 11 U.S.C. § 521(a)(1). This requirement exists to enable the trustee to determine whether claims should be pursued. In other words, once a debtor enters the bankruptcy process, it is no longer up to the debtor to unilaterally determine what claims the trustee should and should not pursue. *See In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993) (explaining how under the definition of the bankruptcy estate, virtually all property of the debtor becomes property of the bankruptcy estate and holding that "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of [that definition]") (citing *In re Neuton*, 922 F.2d 1379, 1382-83 (9th Cir. 1990)).

The Court previously determined that Plaintiff improperly scheduled her claims after reviewing her bankruptcy schedules. *See* First Dismissal Order at 11-12. Though Plaintiff has not altered her factual allegations on this issue, Plaintiff nevertheless argues that she properly scheduled her claims by listing the purported debt as unsecured. *See* Pl.'s Opp. to MERS Mot. at 11. As the Court explained in the First Dismissal Order, however, "[c]auses of action are separate assets which must be formally listed." *Cusano v. Klein*, 264 F.3d 936, 947 (9th Cir. 2001) (citing *Vreugdenhill*, 950 F.2d at 526). "Simply listing the underlying asset [or liability] out of which the cause of action arises is not sufficient." *Id*. Thus, regardless of whether or not Plaintiff scheduled her debt properly, she failed to schedule any related claims as assets.

As a result, to the extent that Plaintiff's claims are viable, they now belong to the bankruptcy estate and Plaintiff lacks standing to pursue them. *Id.* at 947-48 ("If [debtor] failed properly to schedule an asset, including a cause of action, that asset continues to belong to the bankruptcy estate and did not revert to [debtor]."); *see also Stein v. United Artists Corp.*, 691 F.2d at 891 (9th Cir.1982) ("It cannot be that a bankrupt, by omitting to schedule and withholding from his trustee all knowledge of certain property, can, after his estate in bankruptcy has been finally

closed up, immediately thereafter assert title to the property on the ground that the trustee had never taken any action in respect to it."). Accordingly, the Court GRANTS Defendants' Motions to Dismiss.[9] In addition, because the Court highlighted Plaintiff's lack of standing as the main defect in her FAC but, as MERS points out, Plaintiff has amended the relevant allegations only to offer legal argument, the Court does not grant leave to amend.

### III.   MOTIONS FOR DEFAULT

After Defendants filed their motions to dismiss, Plaintiff moved for default against The Bank of New York Mellon Corporation as Trustee for the Certificateholders of CWMBS, Inc., – CHL Mortgage Pass-Through Trust 2005-02 Mortgage Pass-Through Certificates, Series 2005-02 ("BONYMCorp"), *see* ECF 137, and ORNTIC, *see* ECF 138. In considering whether to enter a default judgment, a district court first must determine whether it has jurisdiction over the case. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Here, the Court finds that it lacks subject matter jurisdiction because, as discussed at length above, Plaintiff lacks standing. *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) ("Standing is a threshold matter central to our subject matter jurisdiction.") (citing *United States v. Hays*, 515 U.S. 737, 742 (1995)). Accordingly, the Court DENIES Plaintiff's motions for default.

Plaintiff's motions additionally seek Rule 11 sanctions against the attorneys representing ORNTIC and BONY on the grounds that their submissions have been fraudulent and/or frivolous because they misrepresented the existence of BONY and ORDMS and because the attorneys have no legal services agreements with BONYMCorp or ORNTIC. BONY's counsel maintains that BONY is the proper defendant in this case and argues that Plaintiff has failed to prove otherwise. In support, BONY notes that the Clerk of the Court has declined to grant default against BONY on two occasions. *See* ECF 64, 123. Having reviewed the record, the Court agrees with BONY's counsel that Plaintiff has failed to establish that BONY is the improper party. *See* BONY's RJN Exh. C (SOT listing BONY as the assignee of Plaintiff's DOT). Accordingly, the Court DENIES

---

[9] Having dismissed the case for lack of standing, the Court does not reach Defendants' other grounds for dismissal.

9

1  Plaintiff's motion for sanctions against BONY's counsel.

2      As for ORNTIC, its counsel explains that, after receiving Plaintiff's Safe Harbor Notice for
3  her Rule 11 motion, counsel contacted ORDMS who then researched the issue and concluded that
4  ORNTIC is in fact the proper party defendant in this case. Upon learning this, counsel
5  immediately filed a Notice of Errata to advise the Court of the error and filed a "corrective"
6  Motion to Dismiss the SAC. ORNTIC's counsel argues that this remedied any offensive pleading
7  within the time allotted in Plaintiff's Safe Harbor Notice and the Court agrees. Accordingly,
8  Plaintiff's motion for sanctions against ORNTIC's counsel is DENIED.

9      **IT IS SO ORDERED.**

10 Dated: August 8, 2016

                                                        _____
                                                        BETH LABSON FREEMAN
                                                        United States District Judge